**MASSACHUSETTS INDEPENDENT CERTIFICATION, INC.,**
**Plaintiff,**

v.

**Michael O. JOHANNS, Secretary of Agriculture, United States Department of Agriculture, Defendant.**

**Civil No. 05–40169–FDS.**

United States District Court,
D. Massachusetts.

March 30, 2007.

Anita Johnson, United States Attorney's Office, Boston, MA, Amy E. Powell, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant.

Jill E. Krueger, Jessica A. Shoemaker, Susan E. Stokes, Farmers' Legal Action Group, Inc., St. Paul, MN, Douglas H. Wilkins, Anderson & Kreiger LLP, Cambridge, MA, for Plaintiff.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

SAYLOR, District Judge.

This is a challenge to regulations adopted by the United States Department of Agriculture ("USDA") pursuant to the Organic Foods Production Act ("OFPA"), 7 U.S.C. § 6501 *et seq.* Plaintiff Massachusetts Independent Certification, Inc. ("MICI") seeks declaratory and injunctive relief from the regulations, which deny private agencies that certify producers of organic foods the right to an administrative appeal of USDA decisions.

The regulatory scheme at issue is somewhat unusual. Congress enacted OFPA in 1990 for the purpose, among other things, of creating consistent national standards for the marketing of organic agricultural products. Food producers and handlers that meet the standards may be certified under the National Organic Program ("NOP") and label their products as "organic" (or a variation of that term). Rather than creating a new network of USDA certifying agents, Congress decided to preserve the existing network of private certification programs, allowing those independent third parties to become accredited and certify operations in the field.[1] The certifying agents compete with one another and charge fees for their services. Packaged products from certification operations that are labeled "100% organic," "organic," or "made with organic [ingredients]" must bear the name of the certifying agent.

A food producer or handler that is denied certification by a certifying agent may appeal to the USDA. If the appeal is successful, the applicant is certified and the products will bear the label of the agent—even if the certifying agency disagrees with the decision. The certifying agent itself, however, may not appeal such a decision.

MICI is a certifying agent operating in Massachusetts. It contends that the regulations denying it a right to appeal violate OFPA and unlawfully deprive it of its due process and First Amendment rights. The Secretary of Agriculture contends that MICI is without standing to challenge the regulations and that the regulations are a valid exercise of the Secretary's statutory authority.

Defendant has moved to dismiss the action for failure to state a claim upon which relief can be granted. For the reasons set

---

**1.** Congress also preserved and incorporated state certification programs, although those programs are not at issue here.

forth below, the Court concludes that MICI has standing to challenge the regulations, but that the regulations are valid under OFPA and do not violate MICI's constitutional rights. Accordingly, defendant's motion to dismiss will be granted.

## I. *Factual Background*

### A. *The Regulatory Scheme*

The Organic Foods Production Act ("OFPA") was enacted in 1990 in order to (1) "establish national standards governing the marketing" of organically produced agricultural products, (2) "assure consumers that organically produced products meet a consistent standard," and (3) "facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501. OFPA delegates authority to the Secretary of Agriculture to promulgate regulations to carry out the Act. *See id.* § 6521.[2]

### 1. *Certifying Agents*

In order to create uniform national standards for organic food, OFPA establishes a national certification program for producers and handlers of organic products and regulates the labeling of organic foods. *See id.* §§ 6503(a), 6504, 6505(a)(1)(A). Rather than requiring the USDA itself to conduct reviews and on-site farm inspections around the country, Congress elected to preserve the existing network of private and state certification programs, allowing independent third parties to act as certification agents. The Act accordingly delegates authority to the Secretary to establish a program for accrediting private "certifying agents" for the purpose of "cer-

tifying a farm or handling operation as a certified organic farm or handling operation in accordance with this chapter." *See id.* at § 6502(3); *see also id.* §§ 6503(d), 6515–6516.

Certifying agents are the first reviewers of applications for certification; they are required to "fully comply with the terms and conditions of the applicable organic certification program" and must agree to carry out OFPA's provisions as well as "such other terms and conditions as the Secretary determines appropriate." *See id.* §§ 6515(f), 6515(d). If a certifying agent determines that a producer or handler of crops or livestock meets the certification requirements, it may grant organic certification and the operation's products may be sold or labeled as organically produced and may bear the USDA seal. *Id.* §§ 6513(a), 6504(3).[3] A certifying agent that falsely or negligently certifies any operation risks losing its accreditation. *Id.* § 6519(e).

Certifying agents under NOP charge applicants fees for certification services. 7 C.F.R. § 205.642. There is no restriction under OFPA or NOP on the number of certifiers in a given location, which permits competition among certifiers for "customers" of their certification services.

### 2. *The Certification Process*

The USDA regulations also contain detailed standards for certification, pursuant to which a producer or handler may label its products according to a four-tiered scheme as "100% organic," "organic," "made with organic [ingredients]" or "organic [ingredients]," depending on the per-

---

**2.** The final rule establishing the NOP was published on December 21, 2000. *See* 65 Fed.Reg. 80548 (Dec. 21, 2000) (codified at 7 C.F.R. pt. 205).

**3.** In order to be labeled as "organic," an agricultural product must be produced with-

out the use of synthetic substances, except as otherwise provided in OFPA, and in accordance with an organic plan agreed to by an accredited certifying agent, the producer, and the handler of the product. 7 U.S.C. § 6504.

centage of organic contents. 7 C.F.R. §§ 205.300–305. All packaged products in the first three categories must identify the name of the certifying agent on the package. *Id.* §§ 205.303, 205.304. Only products in the first two categories may bear the USDA "organic" seal. *Id.* § 205.303

The regulations require certifying agents to accept applications from any producers or handlers within their areas of accreditation and to certify all qualified applicants. *Id.* § 205.501(a)(19). If a certifying agent determines that an applicant for certification is not in compliance with OFPA, the agent generally must issue a written notice of noncompliance. *See Id.* § 205.405(a). If the applicant is unable to resolve the issue, the certifying agent must issue a written notice of denial of certification. *Id.* § 205.405(c). An applicant who receives a notice of denial of certification may reapply for certification, request mediation with the certifier, or file an appeal. *Id.* at § 205.405(d).[4]

### 3. *The Appeal Process*

OFPA mandates that USDA provide an appeals procedure. First, under the heading of "General requirements," the statute provides:

A program established under this chapter shall—

... provide for procedures that allow *producers and handlers* to appeal an adverse administrative determination under this chapter....

7 U.S.C. § 6506(a)(3) (emphasis added). In addition, 7 U.S.C. § 6520 provides specifically:

(a) The Secretary shall establish an expedited administrative appeals procedure under which *persons* may appeal an action of the Secretary ... or a certifying agent under this chapter that—

(1) adversely affects such person; or

(2) is inconsistent with the organic certification program established under this chapter.

(b) A final decision of the Secretary under subsection (a) of this section may be appealed to the United States district court for the district in which such person is located.

(emphasis added).

The principal challenged regulation, 7 C.F.R. § 205.681(a), provides as follows:

(a) An applicant for certification may appeal a certifying agent's notice of denial of certification, and a certified operation may appeal a certifying agent's notification of proposed suspension or revocation of certification to the Administrator [for the Agricultural Service]....

(1) If the Administrator ... sustains a certification applicant's or certified operation's appeal of a certifying agent's decision, the applicant will be issued organic certification, or a certified operation will continue its certification, as applicable to the operation. *The act of sustaining the appeal shall not be an adverse action subject to appeal by the affected certifying agent.*

(2) If the Administrator ... denies an appeal, a formal administrative proceeding will be initiated to deny, suspend, or revoke the certification. Such proceeding shall be conducted [before an Ad-

---

**4.** If, after receiving a notice of noncompliance or denial of certification, a producer or handler applies for certification from a different certifying agent, the operation is required to include a copy of the notification of non-compliance or denial of certification and a description of actions it has taken, with supporting documentation, to correct the non-compliance. *Id.* § 205.405(e).

ministrative Law Judge] pursuant to the U.S. Department of Agriculture's Uniform Rules of Practice. . . .

(emphasis added).[5] The regulations separately provide for appeals of USDA actions that would deny, suspend, or revoke a certifying agent's accreditation. 7 C.F.R. § 205.681(b).

Thus, under the regulations, certifying agents are not afforded the opportunity to appeal the issuance of organic certification.

## B. *The Country Hen Proceedings*

Plaintiff MICI is an independent organization that certifies organic producers and handlers of agricultural products. On April 29, 2002, the USDA accredited MICI to certify crop, livestock, wild crop, and handling operations to the USDA's National Organic Standards under the name "NOFA–Massachusetts Organic Certification Program."[6]

### 1. *The Country Hen's Application for Organic Certification by MICI*

On July 15, 2002, an egg-farming operation named The Country Hen applied to MICI for organic certification.[7] After conducting an inspection of the Country Hen's operations, MICI issued a notice of noncompliance on October 4, 2002. The notice cited four areas of noncompliance, including failure to provide hens with access to the outdoors as required by NOP regula-tions.[8] MICI gave The Country Hen until December 31, 2002, to take corrective actions.

On October 15, 2002, The Country Hen's owner, George Bass, met with MICI's certification administrator, Don Franczyk, to present a plan for providing its hens with outdoor access by attaching two-story porches to the existing hen houses. The Country Hen also sent MICI a letter detailing its proposed organic plan and explaining how and when the hens would have outdoor access. On October 21, 2002, MICI's organic certification committee met and voted to deny The Country Hen certification, concluding that the proposed plan was inadequate under the regulations. MICI issued a notice of denial of certification on October 24, 2002.

At some point prior to MICI's certification decision, it appears that The Country Hen submitted a proposed egg carton to NOP Program Manager Richard Matthews. The proposed carton bore the USDA Organic seal, stated that The Country Hen was "certified organic by NOFA/Mass," and stated that The Country Hen's "feed and eggs are certified organic by NOFA/Mass." The proposed egg carton was reviewed and approved before MICI's decision to issue a notice of intent to deny The Country Hen certification. Matthews did not consult MICI about his decision to approve the egg carton.

**5.** MICI also challenges 7 C.F.R. § 205.680, which provides generally for appeals by persons who are adversely affected by various specified decisions, without expressly providing a right of appeal to certifying agents.

**6.** NOFA is an acronym for the Northeast Organic Farming Association. MICI now uses the name "Baystate Organic Certifiers."

**7.** Unknown to MICI, The Country Hen had previously applied for organic certification to another certifying agent, which rejected the application on the same grounds ultimately cited by MICI. The Country Hen was required under the regulations to disclose that fact to MICI. See 7 C.F.R. § 205.405(e).

**8.** The regulations state that an organic livestock producer must provide conditions that allow for exercise, freedom of movement, and reduction of stress appropriate to the species. 7 C.F.R. § 205.238(a)(4). The regulations also state that such a producer must establish and maintain livestock living conditions that accommodate the health and natural behavior of animals, including access to the outdoors. 7 C.F.R. § 205.239(a)(1).

### 2. The Appeal of MICI's Denial of Certification

On October 22, 2002, The Country Hen appealed MICI's vote to deny its certification application to the Administrator for the Agricultural Marketing Service. Three days later, on October 25, 2002, Franczyk received a copy of the Administrator's decision letter, which stated that The Country Hen's appeal had been sustained by the NOP. The Administrator's decision directed MICI to grant certification to The Country Hen, retroactive to October 21, 2002.

After the decision was issued, The Country Hen released egg cartons onto the market that bore the USDA Organic seal and stated (inaccurately) that The Country Hen, its eggs, and its feed were "certified organic by NOFA/Mass." MICI repeatedly demanded that The Country Hen stop making claims that it was certified by NOFA/Mass. It was not until the summer of 2003, however—when The Country Hen obtained certification from another accredited certifying agent—that it stopped using the NOFA/Mass certification name on its egg cartons.

### 3. MICI's Administrative Efforts to Appeal the Decision

On October 28, 2002, MICI sent a letter to the Administrator objecting both to the procedure followed in deciding The Country Hen's appeal and the substance of the October 25 decision. After receiving no response, MICI filed a complaint with the USDA Office of Administrative Law Judges, petitioning to overturn the Administrator's decision and alleging that USDA had violated due process requirements. On November 4, 2003, an Administrative Law Judge issued an order dismissing MICI's complaint, concluding that subject matter jurisdiction was lacking under 7 C.F.R. § 205.681(a)(1).

On December 11, 2003, MICI filed an appeal petition and brief with the USDA Judicial Officer. MICI renewed its objection to the Administrator's decision, arguing that the Secretary had a duty under OFPA and the United States Constitution to provide MICI with appeal rights. An order dismissing MICI's appeal on the basis of lack of subject matter jurisdiction was issued on April 21, 2004.

## II. Procedural Background

MICI filed the current action on September 27, 2005. MICI contends that the failure of the NOP regulations to provide it with a right of appeal violates various legal and constitutional requirements. Specifically, the amended complaint makes the following four claims: (1) that the regulations violate OFPA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), because they do not provide MICI with a right of appeal (Count 1); (2) that the regulations violate MICI's due process rights under the Fifth Amendment (Count 2); (3) that the regulations violate OFPA and the APA because they permit the USDA to order certifying agents to grant organic certification (Count 3); and (4) that the regulations violate MICI's rights to freedom of speech and freedom of association under the First Amendment (Count 4). MICI seeks various forms of declaratory and injunctive relief.

Defendant has moved to dismiss the complaint pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim upon which relief may be granted) on the ground that plaintiff is without standing to prosecute the claim.

## III. Analysis

### A. Whether Plaintiff Has Standing to Challenge the Regulation

■ Article III of the United States Constitution limits the jurisdiction of the

federal courts to actual cases or controversies. U.S. Const. art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Accordingly, a plaintiff in federal court must "establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). The standing doctrine serves to identify those disputes that are "appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (quotations and internal citations omitted).[9]

■ Standing has both a constitutional and a prudential component. Constitutional standing requires proof of three elements:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130 (quotations and internal citations omitted). Where a statute affords procedural rights to a particular class of persons, the standing inquiry is less demanding: "The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and

immediacy." *Lujan*, 504 U.S. at 572 n. 7, 112 S.Ct. 2130.

■ Prudential standing "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove*, 542 U.S. at 12, 124 S.Ct. 2301 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

Defendant here contends that MICI does not have constitutional standing for essentially two reasons: that it does not allege a current or imminent injury and that the alleged harm is not redressable. It further contends that MICI does not have prudential standing, because its claim does not fall within "zone of interests" that the statute was meant to protect.

### 1. *Constitutional Standing*

#### a. *Injury in Fact*

■ As noted, to establish constitutional standing, MICI must show that it has suffered or is about to suffer an "injury in fact." The injury must be "actual or imminent" in order "to reduce the possibility that a court might unconstitutionally render an advisory opinion by 'deciding a case in which no injury would have occurred at all.'" *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C.Cir.1996) (quoting *Lujan*, 504 U.S. at 564 n. 2, 112 S.Ct. 2130).

In *Harvey v. Veneman*, 396 F.3d 28, 34–35 (1st Cir.2005), the First Circuit held that a producer and consumer of organic foods had standing to challenge various regulations promulgated by the USDA un-

9. MICI bears the burden of establishing the elements of standing, as those elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* at 561, 112 S.Ct. 2130.

der OFPA. The plaintiff there contended, in substance, that the regulations were insufficiently strict and thus permitted food to be inaccurately labeled as "organic." The claimed injury was that "the challenged regulations weaken the integrity of the organic program and the standards it sets forth," which harmed the plaintiff "as a consumer of organic foods because it degrades the quality of organically labeled foods." *Harvey*, 396 F.3d at 34.[10] The court held that the claimed injury represented a "concrete, redressable injury sufficient to confer Article III standing" to challenge the regulations. *Id.* It likewise found that the plaintiff's alleged injuries "fall precisely within the zone of interests that the statutes at issue were meant to protect," and thus the requirements of prudential standing were satisfied. *Id.* at 34–35.

█ Here, MICI contends that it has suffered an injury in fact as a result of defendant's refusal to enact a regulation providing it with the opportunity to appeal when its decisions to deny certification are overturned. Specifically, MICI contends that because the current regulations do not give it such a right, (1) the integrity of the organic certification program as a whole is compromised, which may cause the demand for certification services to diminish, and (2) its name may appear on product labels that it believes do not meet NOP standards, which may lead food producers and handlers to choose to enlist the services of other certifiers. MICI contends that the regulations therefore cause harm to both its economic well-being and reputation.

MICI thus appears to claim an injury that is similar to, or indeed more substantial than, the injury claimed in *Harvey*.

MICI's claimed injury as to the "integrity" of the organic program is largely identical to the claimed injury in *Harvey*; certainly MICI—whose entire business appears to consist of certifying organic operations—has a far greater interest, and a far greater stake, in that program than a mere consumer of organic food. Furthermore, MICI claims a specific economic and reputational injury arising out of the regulatory scheme, which (it contends) would force it to affix its certification to products that it believes do not meet the requisite standards.

It is true, as defendant points out, that MICI's name does not currently appear on any product of a producer or handler to which it denied certification. It is also true that MICI does not contend that it continues to suffer an injury arising out of the use of its name by The Country Hen. Those facts, however, do not compel a different result. MICI continues to serve as a certifying agent, and continues to make certification decisions as to food producers and handlers on an ongoing basis. Presumably, those decisions are routinely, and continually, enforced and challenged on appeal. *See Osediacz v. City of Cranston*, 414 F.3d 136, 143 (1st Cir.2005) (plaintiff must only "indicate an objectively reasonable possibility that she would be subject to" cognizable harm). In that respect, therefore, MICI's claimed injury is similar to (indeed, much more significant than) the consumer of organic food in *Harvey*, who simply asserted an interest in eating organic food that complied with appropriate standards. For purposes of constitutional standing, MICI's alleged injury is sufficiently imminent to confer standing.

---

**10.** The standing issue in *Harvey* appears to have been resolved entirely on the issue of the plaintiff's standing as a consumer, rather than as a producer, of organic foods. *See* 396 F.3d at 34.

### b. *Redressability*

Defendant further contends that the alleged injuries are not redressable. The redressability element of standing requires that the requested relief directly redress the injury alleged. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 105–09, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding that plaintiffs lacked standing where the violations had been abated at the time of the suit). Plaintiff must establish that it is "likely," as opposed to merely "speculative," that its claimed injuries will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

■ Defendant contends that the relief sought—(1) a declaratory judgment that the Secretary has not complied with OFPA and has a duty to revise the regulations; (2) a declaratory judgment that the regulations violate due process; (3) an injunction against enforcement of the regulations preventing appeals by certifying agents; (4) a declaratory judgment that the Secretary may not compel an accredited certifying agent to certify a farm or handling operation as organic; and (5) a declaratory judgment that appeals under OFPA must be heard under the USDA Uniform Rules of Practice—cannot redress the injury alleged to have been suffered by MICI. Defendant argues that merely providing MICI with an opportunity to participate in an appeal would not necessarily prevent the economic and reputational harms MICI allegedly fears, as the Administrator, an administrative law judge, and (ultimately) the district court would retain the power to overturn any of MICI's certification denials. *See California Forestry Ass'n v. Thomas,* 936 F.Supp. 13, 18 (D.D.C.1996) (rejecting plaintiffs' claim that their economic injury would be alleviated if the Forest Service were enjoined from implementing interim guidelines protecting an endangered species, as the USDA would retain full authority to determine the size of the timber harvest). In other words, according to defendant, MICI's certification could still appear on products that it does not believe meet USDA standards, and MICI would be powerless to stop it.

That argument, however, conflates MICI's interest in participating in the process with MICI's desire to achieve a particular result. Indeed, if the rule were otherwise, no person could ever have standing to challenge his exclusion from a procedural process unless he could demonstrate that he was certain to prevail if he participated. Furthermore, while the Court cannot rewrite agency rules, or engage in policymaking, it does have the power to hold unlawful or set aside agency actions under appropriate circumstances. *See* 5 U.S.C. § 706(2); *see also Harvey,* 396 F.3d at 40 (finding regulations of USDA "contrary to the plain language of OFPA"). To that extent, therefore, the alleged injury is redressable for purposes of the standing analysis.

### c. *"Procedural Rights" Standing*

■ MICI also contends that it has constitutional standing based upon its assertion of a procedural right under OFPA that threatens a concrete and particularized interest. MICI complains, in substance, that the USDA has violated a procedural right granted to it by Congress: the right to participate in the appeal of a certification decision.

> [I]n cases in which a party has been accorded a procedural right to protect his concrete interests, the primary focus of the standing inquiry is not the imminence or redressability of the injury to the plaintiff, but whether a plaintiff who has suffered personal and particularized injury has sued a defendant who has caused that injury.

... [A] plaintiff may have standing to challenge the failure of an agency to abide by a procedural requirement only if that requirement was designed to protect some threatened concrete interest of the plaintiff. In this type of case, ... the plaintiff must show that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff. The mere violation of a procedural requirement thus does not permit any and all persons to sue to enforce the requirement.

*Florida Audubon*, 94 F.3d at 664 (quotations and internal citations omitted).[11]

■ The "concrete" interests asserted by MICI are its interests in the integrity of the organic program generally and its specific interests in maintaining its own viability as a certifying agent. There is, of course, an unusual aspect to the interests it asserts. MICI—unlike an organic food producer or consumer—has taken on a quasi-governmental role in the regulatory scheme, as the front-line decision-maker in the organic certification process. It is true, of course, that such decision-makers in other contexts are almost always governmental officials, who do not have standing to participate in the appeal of their own decisions. However, MICI—at least for purposes of the standing analysis—is not a mere governmental agent, but a private economic entity with a separate and distinct economic and reputational interest. That interest, in this context, is sufficiently "concrete" and particularized to confer standing.

### 2. *Prudential Standing*

■ To satisfy the "zone of interest" test for prudential standing, a plaintiff's interest in the litigation must be "arguably within the zone of interests to be protected or regulated by the statute ... in question." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). To apply this test, courts first discern the interests arguably to be protected or regulated by the statute, and then determine whether plaintiff's interests arguably fall within that same zone of interests. *National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). Only a party claiming an interest that is "marginally related to or inconsistent with the purposes implicit in the statute" should be precluded from judicial review under this test. *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

Defendant argues that neither the statute nor the legislative history of OFPA contains any language suggesting that the statute was intended to benefit private certifying agents by increasing their market for certification or boosting their reputations. That argument, however, presupposes an unduly narrow focus to the standing inquiry: the inquiry is not whether there is an "indication of congressional purpose to benefit the would-be plaintiff." *National Credit Union Admin.*, 522 U.S. at 489, 118 S.Ct. 927, quoting *Clarke*, 479 U.S. at 399–400. Rather, the Court should determine whether the claimed interests

---

**11.** The proper inquiry is thus not whether any injury could result from the denial of procedural rights, but whether a constitutionally sufficient injury has resulted from the underlying substantive decision. *City of Orrville v. F.E.R.C.*, 147 F.3d 979, 986 (D.C.Cir.1998); *Florida Audubon*, 94 F.3d at 669 ("In other words, unless there is a substantial probability that the substantive agency action that disregarded a procedural requirement created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing.").

are only "marginally related to or inconsistent with the purposes" of the statute.

■■■ Here, the purposes of OFPA are to "establish national standards governing the marketing" of organic products, to "assure consumers that organically produced products meet a consistent standard," and to "facilitate interstate commerce" in organic food. 7 U.S.C. § 6501. Congress intended to diminish the costs of implementing a national organic program by enlisting the pre-existing expertise of private organizations to perform the initial certification of producers and handlers. MICI's claimed interests—to maintain the integrity of the organic program and to maintain its own viability as a certifying agent—fall easily within the zone of interests sought to be protected or regulated by the statute, and are thus sufficient to confer prudential standing.

### B. *Whether the Regulations Violate OFPA*

In Counts 1 and 3, MICI claims that the challenged regulations, 7 C.F.R. §§ 205.680 and 205.681(a), are inconsistent with, or otherwise violate, OFPA.[12] The analytical framework for resolving that issue is set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■■■ In *Chevron,* the Supreme Court established a two-step analysis for reviewing an agency's statutory construction. *Id.* at 842–43, 104 S.Ct. 2778. The analysis begins with "whether Congress has directly spoken to the precise question

at issue." If Congress's intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. If Congress has not expressed its intent unambiguously, or if the Congress has left a gap for the agency to fill, the regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. 2778; *see also Household Credit Servs., Inc. v. Pfennig,* 541 U.S. 232, 239, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004). Under this second step, the agency's construction is accorded substantial deference. *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778; *see also United States v. Mead Corp.,* 533 U.S. 218, 227–28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (" 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.' ") (internal citations omitted). This Court should not simply substitute its judgment for that of the agency. *See Mead,* 533 U.S. at 229, 121 S.Ct. 2164 ("a reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise").

### 1. *Step One: Whether Congress Has Directly Spoken to the Question*

The first question under *Chevron* is whether Congress has directly spoken to "the precise question at issue": that is, whether Congress intended to prohibit appeals by certifying agents of certification

---

12. Plaintiff also contends that the regulations violate the APA. The APA provides a general cause of action to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

Plaintiff does not appear to claim, however, any additional procedural rights under the APA that are independent of whatever rights are provided in OFPA. Therefore, a separate analysis of whether the challenged regulations violate the APA is unnecessary.

decisions. *See* 467 U.S. at 842, 104 S.Ct. 2778.

As noted above, § 6506(a)(3) states that "[a] program established under this chapter shall ... provide for procedures that allow *producers and handlers* to appeal an adverse administration determination under this chapter." (emphasis added). By contrast, § 6520(a) provides that the Secretary "shall establish an expedited administrative appeals procedure under which *persons* may appeal ...." (emphasis added).[13] Those "persons" may appeal "an action of the Secretary" or "an action of ... a certifying agent." *Id.*[14] The type of "actions" which those "persons" may appeal is any action that "adversely affects such person" or "is inconsistent with the organic certification program established under this title." *Id.*

 If the "precise question at issue" is whether Congress has limited appeals to producers and handlers, thereby excluding certifying agents, the answer to that question is almost certainly "yes." Section 6506(a)(3) states, in unequivocal terms, that the NOP shall allow "producers and handlers" to appeal adverse decisions. It is hard to imagine that Congress intended by that language to allow appeals by certifying agents—who, by definition, are *not* producers or handlers.

The Court acknowledges, however, that § 6520(a) uses the term "persons," rather than "producers and handlers," which introduces at least a possible ambiguity. Arguably, the use of different terms at different points in OFPA was intended to convey different meanings, and that the term "person" was intended to have a broader meaning, possibly encompassing certifying agents. The Court will therefore assume that Congress has not expressed its intent unambiguously, and proceed to the second step of the analysis.

## 2. *Step Two: Whether the Regulations Are Arbitrary, Capricious, or Manifestly Contrary to the Statute*

The issue then becomes whether the regulations are entitled to deference under the second step of *Chevron*—that is, whether the regulations are arbitrary, capricious, or manifestly contrary to the statute. The Court concludes that they are not.

First, and as noted, § 6506(a)(3) plainly states that the NOP shall provide for appeals by "producers and handlers." It is hardly arbitrary or capricious, or manifestly incorrect, for the Secretary to conclude that Congress intended such appeals to be limited to those specific categories of persons.

Second, Congress intended, as part of the statutory scheme, for a certifying agent to be a subordinate decision-maker, not a wholly independent party. Congress sought to use the pre-existing network of certifying agents (and state certifying agencies) as an efficient and cost-effective substitute for the creation of a new network of USDA certifiers, and thus for certifying agents to serve in a quasi-governmental function. It would be highly anomalous, indeed unprecedented, to permit individual governmental decision-makers the right to participate as parties in the appeals of their decisions. USDA inspectors, administrators, and administrative law judges do not normally participate as parties to appeals (nor, for that matter,

---

**13.** The term "person" is defined under OFPA to include "an individual, group of individuals, corporation, association, organization, cooperative, or other entity." 7 U.S.C. § 6502(15). MICI, as a corporation, falls within the facial definition of "person."

**14.** A "person" can also appeal an action of "the applicable governing state official." *Id.*

do United States District Judges). Certainly it was not arbitrary or capricious for the Secretary to interpret the statute to produce such an orthodox result.

Third, there is nothing in the statute to suggest that Congress was concerned with protecting the reputational or economic interests of certifying agents. Those interests may be enough to confer standing, but the Secretary need not conclude that they require protection under the regulatory scheme.

Fourth, the Secretary's interpretation of the term "person" as excluding the government and its agents is consistent with long-standing principles of statutory construction. *See, e.g., Vermont Agency of Nat'l Resources v. United States ex rel. Stevens,* 529 U.S. 765, 780, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (citing "longstanding interpretive presumption" that the word "person" does not include the sovereign).

Fifth, § 6520(a) uses the term "person" and "certifying agent" in the same sentence, suggesting that Congress did not intend the two to have overlapping meanings. It would be absurd, for example, to permit a certifying agent to appeal its own decision. The Secretary could therefore reasonably conclude that the term "person" was not intended to include certifying agents.

Sixth, the regulations specifically provide that a certifying agent must provide a written notice of denial of certification. 7 C.F.R. § 205.405(c). Such a notice must, among other things, "state the reason(s) for denial." *Id.* at § 205.405(d). The Secretary could thus reasonably conclude that a certifying agent had an ample opportunity to set forth the reasons for its decision in the record, and that it would be duplicative and unnecessary to permit the certifying agent an additional opportunity to restate the reasons for its actions.

Accordingly, the Court concludes that the challenged regulations are neither arbitrary, capricious, nor manifestly contrary to OFPA. Counts 1 and 3 therefore fail to state a claim upon which relief can be granted.

## C. *The Due Process Claim*

■ Count 2 alleges that the denial of a right to appeal deprives MICI of a constitutionally protected property interest without a hearing in violation of its rights to due process of law. The property interest which MICI claims is at issue is the use of its name—specifically, the right to control the use of its name in the certification process. That claim may be summarily rejected.

The Court does not doubt that MICI has property rights in the use of its name and any associated good will. However, it voluntarily surrendered a portion of those rights in exchange for consideration: the right to participate in the NOP and to charge fees for its certification services. By applying for and accepting accreditation, MICI agreed to "carry out the provisions of [OFPA]" and "to such other terms and conditions as the Secretary deems appropriate." 7 U.S.C. § 6515(d). MICI did so with the understanding that the Secretary establishes the standards for organic production, *see generally* 7 U.S.C. § 6503 *et seq.,* and with the understanding that all of its decisions were subject to review by the Secretary, 7 U.S.C. § 6520(a); 7 C.F.R. §§ 205.680, 205.681. MICI also did so with the understanding that its name would be placed on product labels where it was the certifying agent. *See* 7 C.F.R. §§ 205.303–305. Finally, MICI was aware that because it is a private entity, the agency would not allow it to establish more stringent standards than those approved by the Secretary as a precondition for use

of its identifying mark. *See* 7 C.F.R. § 205.501(b). To the extent, therefore, that MICI has given up any rights in the use of its name, it did so voluntarily.

Furthermore, MICI has been provided an opportunity to be heard in the process. MICI is required, when denying certification, to explain its decision to the producer or handler. *See* 7 C.F.R. §§ 205.405(a), (c). It is apparently free, under the regulations, to explain its decisions in as much detail as it sees fit. Those decisions are part of the record on appeal and are available for consideration by the administrator or administrative law judge

MICI therefore has not been deprived of any property right without notice and without an opportunity to be heard. Accordingly, Count 2 of the amended complaint fails to state a claim upon which relief can be granted.

### D. *The First Amendment Claim*

Finally, Count 4 alleges a violation of MICI's rights to freedom of speech and freedom of association under the First Amendment. MICI argues that the "USDA's regulations force certifying agents, like MICI, to make a direct affirmation of belief that they agree that a particular producer or handler is in compliance with the requirements of the NOP, even when they do not agree," citing *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 976–77 (1st Cir.1993).

In essence, MICI contends that it is being required to engage in compelled speech and compelled association in violation of its constitutional rights. Certification under the organic program is not, however, a statement of personal belief. Rather, certification transmits a government message: a message that the specific producer or handler has been certified as meeting certain government standards.

The government may "regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (cited in *Harvey*, 396 F.3d at 42–43). As the First Circuit noted in *Harvey*, the government under OFPA "has created a scheme that uses private certifiers to transmit information regarding the national certification program, [which is] a clear example of a governmental message." *Harvey*, 396 F.3d at 42. MICI is thus not being compelled to engage in compelled speech or compelled association in violation of the First Amendment. Accordingly, Count 4 of the amended complaint fails to state a claim upon which relief can be granted.

### III. *Conclusion*

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**